IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| KELVIN HUNTER & ABDUL NGOBEH, *on behalf of themselves and all others similarly situated, et al.*, | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) Civil Action No. 1:24-cv-02345-AJT-IDD ) |
| LASERSHIP, INC. d/b/a ONTRAC FINAL MILE, | ) ) ) ) |
| *Defendant*. | ) |

**MEMORANDUM OPINION AND ORDER**

In this Fair Labor Standards Act ("FLSA") action,[1] Plaintiffs Kelvin Hunter and Abdul Ngobeh ("Plaintiffs") allege that Defendant LaserShip, Inc. (d/b/a OnTrac Final Mile) ("OnTrac") and its contractors, acting as joint employers, are misclassifying delivery drivers as independent contractors and failing to pay them overtime wages. [Doc. No. 1] ¶ 74. Before the Court is Plaintiffs' Motion for Court Authorized Notice Pursuant to 29 U.S.C. § 216(b), [Doc. No. 29] (the "Motion"), which the Court took under advisement following a hearing on April 30, 2025. Upon consideration of the Motion, the memoranda and exhibits submitted in support thereof and in opposition thereto, the argument of counsel at the hearing, and for the reasons stated below, the Motion, [Doc. No. 29], is **GRANTED**, upon the terms and conditions stated herein.

**I. BACKGROUND**

As alleged in the Complaint, OnTrac is a last-mile delivery service headquartered in McLean, Virginia and operating in approximately thirty-five states. [Doc. No. 21] ¶ 2. It has four

---

[1] Plaintiffs also bring suit under the Virginia Overtime Wage Act, Virginia Wage Payment Act, and Virginia Misclassification Law, [Doc. No. 21] at 1-2, although only notice under the FLSA claim is the subject of the Motion. [Doc. No. 30] at 1 n.1.

Virginia warehouses, at which approximately 745 "Master Contractors" employ approximately 4,100 delivery drivers to deliver packages from these four facilities alone. [Doc. No. 36] at 12. OnTrac contracts with Master Contractors, which hire delivery drivers who are classified as independent contractors and complete delivery services on OnTrac's behalf. [Doc. No. 21] ¶ 3; [Doc. No. 30] at 10.

Hunter worked for two Master Contractors at two of OnTrac's Virginia facilities,[2] [Doc. No. 30-4] ¶¶ 2-3, and Ngobeh worked for a different Master Contractor out of a Virginia OnTrac warehouse and a Maryland OnTrac warehouse. [Doc. No. 30-5] ¶¶ 1-2. Plaintiffs' affidavits uniformly describe that, even while working for different Master Contractors and at different OnTrac facilities, at the start of the workday, the drivers were expected to report to a OnTrac warehouse, log into OnTrac's application, run a query that dictates what packages they are responsible for delivering, gather and load the packages from the OnTrac warehouse into their vehicles, and begin delivering them through a route that OnTrac arranges for each driver. [Doc. No. 21] ¶¶ 41-44, 57-58; [Doc. No. 30-4] ¶¶ 5, 7; [Doc. No. 30-5] ¶ 4. While completing deliveries, OnTrac dispatchers are in communication with the drivers, and if there are any changes to the route, a OnTrac dispatcher will contact the driver directly to adjust their schedule for the day. [Doc. No. 21] ¶ 45; [Doc. No. 30-4] ¶¶ 8-9; [Doc. No. 30-5] ¶¶ 6-7. During the day, the drivers are compensated based on the number of packages they deliver, and they receive no extra pay for delivering packages for more than forty hours a week. [Doc. No. 21] ¶ 55; [Doc. No. 30-5] ¶¶ 13-14; [Doc. No. 30-4] ¶¶ 15-16.

Hunter works approximately ten hours per day, seven days per week and is paid between $2.25 and $2.50 per package. [Doc. No. 30-4] ¶¶ 11, 14. Similarly, Ngobeh generally works

---

[2] At the time of his hiring, OnTrac completed Hunter's background check. [Doc. No. 30-4] ¶ 4.

between ten to twelve hours per day, seven days a week, and is paid $1.30 per package. [Doc. No. 30-5] ¶¶ 9, 12. Both Plaintiffs interact with drivers for other Master Contractors working at OnTrac facilities and know that they receive similar pay, work similar hours, and do not receive overtime compensation. [Doc. No. 30-4] ¶¶ 17-18; [Doc. No. 30-5] ¶¶ 15-16.

Plaintiffs' declarations echo those that were filed in a parallel FLSA litigation that is currently pending in the Southern District of New York.[3] *See West v. Lasership, Inc. et al.*, No. 1:21-cv-5382 (S.D.N.Y. filed June 17, 2021). In the *West* action, the lead plaintiffs filed an action under the FLSA and the New York Labor Law alleging that delivery drivers were misclassified as independent contractors while being jointly employed by OnTrac and Master Contractors,[4] and in support of that position, filed the declarations of ten delivery drivers who worked for nine Master Contractors out of three New York OnTrac facilities, all of which confirmed that the delivery drivers also were responsible for sorting packages at the OnTrac facility before delivering them, paid per delivered package, and did not receive overtime pay. *See* [Doc. No. 30-6] at 89-90, 92-93, 97-98, 100-01, 103-04, 106, 108-09, 111-12, 114-15, 117-18.

Based on the declarations filed in this and the *West* action, Plaintiffs contend that they have sufficiently alleged and established at this stage of the litigation that OnTrac jointly employs the Plaintiffs with the Master Contractors, regardless of what Master Contractor they work for, thereby misclassifying them as independent contractors and improperly depriving them of overtime pay, *id.* ¶¶ 4-5, 28-39; and based on these contentions, seek authorization pursuant to 29 U.S.C. § 216(b) to provide notice of this action, with an opportunity to opt-in, to all delivery drivers nationwide

---

[3] In the *West* action, a magistrate judge denied the plaintiffs' first motion for collective action certification after months of discovery, and in light of the significant amount of discovery that had been conducted, applied the heighted "modest plus" standard. S*ee West v. LaserShip, Inc.*, No. 1:21-cv-05382, 2024 WL 1461403, at *6 (S.D.N.Y. Apr. 4, 2024). A renewed motion for collective action certification based on addition declarations is pending. Second Motion to Certify Class, *West v. LaserShip, Inc.*, No. 1:21-cv-05382 (S.D.N.Y. Oct. 10, 2024), ECF No. 147.
[4] First Amended Complaint, *West v. LaserShip, Inc.*, No. 1:21-cv-05382 (S.D.N.Y. Sept. 7, 2021), ECF No. 22.

3

who worked for OnTrac through one or more of its Master Contractors at any time since December 23, 2021 and did not sign an arbitration agreement.

## II. STANDARD OF REVIEW

Pursuant to the FLSA, an employee may bring an action against their employer "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. 216(b). FLSA collective actions are intended to resolve common issues of law and fact in one proceeding and lower the individual costs of vindicating rights. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). "The 'notice' stage of an FLSA collective action is also known as the 'conditional certification' stage." *Purdham v. Fairfax Cnty. Pub. Sch.*, 629 F. Supp. 2d 544, 547 (E.D. Va. June 22, 2009). District courts have significant discretion in deciding whether to facilitate notice to prospective plaintiffs in FLSA collective actions. *Hoffmann–La Roche*, 493 U.S. at 169.

The prevailing framework applied throughout this district and the Fourth Circuit for facilitating notice is the two-step *Lusardi* framework.[5] *See, e.g.*, *Miller v. Leidos, Inc.*, No. 1:24-cv-931 (PTG/LRV), 2025 WL 938107, at *2 n.2 (E.D. Va. Mar. 27, 2025). At the first step of this framework, a plaintiff must "make a modest factual showing . . . that they and potential [collective action members] together were victims of a common policy or plan that violated the law," *Choimbol v. Fairfield Resorts, Inc.*, 475 F. Supp. 2d 557, 564 (E.D. Va. 2006), and because plaintiffs must meet this standard before receiving discovery, all that must be shown is "a similar legal issue as to coverage, exemption, or nonpayment of minimum wages or overtime arising from

---

[5] The Court declines to adopt, as OnTrac urges, the heightened standard for authorizing notice that was announced in *Swales v. KLLM Transportation Services*, LLC, 985 F.3d 430, 433 (5th Cir. 2021), as judges in this District have nearly unanimously done. *See Miller v. Leidos, Inc.*, No. 1:24-cv-931 (PTG/LRV), 2025 WL 938107, at *2 n.2 (E.D. Va. March 27, 2025); *O'Brien v. Smoothstack, Inc.*, No. 1:23-cv-491, 2024 WL 1356674, at *6 (E.D. Va. Mar. 28, 2024); *Hernandez v. KBR Services*, No. 3:22-cv-530, 2023 WL 5181595, at *6 (E.D. Va. Aug. 11, 2023); *Thomas v. Maximus, Inc.*, No. 3:21cv498, 2022 WL 1482010, at *3 (E.D. Va. May 10, 2022); *Hughes v. NVR, Inc.*, No. , 2022 WL 4856197, at *4 (E.D. Va. Sep. 30, 2022); *Midkiff v. Anthem Cos., Inc.*, 640 F. Supp. 3d 486, 493 (E.D. Va. Nov. 10, 2022). *But see Mathews v. USA Today Sports Media Grp.*, LLC, No. 1:22-cv-1407, 2023 WL 3676795 (E.D. Va. Apr. 14, 2023).

at least a manageably similar factual setting with respect to their job requirements and pay provisions." *Mazariegos v. Pan 4 Am., LLC*, No. DLB-20-2275, 2021 WL 5015751, at *3 (D. Md. Oct. 28, 2021). Importantly, "'[s]imilarly situated' [does] not mean 'identical.'" *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1217 (11th Cir. 2001). At this stage, the Court will not resolve factual disputes, decide substantive issues, or evaluate the credibility of any witnesses.[6] *Gregory v. Belfor USA Grp., Inc.*, No. 2:12cv11, 2012 WL 3062696, at *5 (E.D. Va. July 26, 2012).

### III. DISCUSSION

A. Common Plan or Policy

In support of their request for notice authorization, Plaintiffs argue that they have sufficiently alleged through Plaintiffs' declarations and the *West* declarations, a class of persons who have been victimized through a common plan or policy to avoid minimum wage laws. OnTrac responds that the large, nationwide class that Plaintiffs seek to conditionally certify involves significant individualized determinations, including whether OnTrac can be properly found to be a joint employer, and is unmanageable in light of the need to determine, *inter alia*, (i) the number of hours each opt-in plaintiff worked, (ii) differences in how they were paid, and (iii) whether the delivery driver may fall within an exception of the FLSA. *See* [Doc. No. 36] at 8, 20-27.

Based on the Plaintiffs' declarations, [Doc. Nos. 30-4, 30-5], and the *West* declarations, [Doc. No. 30-6] at 89-90, 92-93, 97-98, 100-01, 103-04, 106, 108-09, 111-12, 114-15, 117-18, the Plaintiffs have made the modest factual showing required at this stage to authorize notice to an

---

[6] If the court conditionally certifies the class, the second stage is the "decertification stage," which occurs when discovery is "virtually complete." *Choimbol*, 475 F. Supp. 2d at 563. "Courts have identified a number of factors to consider at this stage, including (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations." *Curtis v. Time Warner Ent.-Advance/Newhouse P'ship*, No. 3:12cv2370, 2013 WL 1874848, at *3 (D.S.C. May 3, 2013) (quoting *Morgan v. Fam. Dollar Stores, Inc.*, 551 F.3d 1233, 1261 (11th Cir. 2008)) (cleaned up). If, after reviewing these considerations, the court determines that the collective plaintiffs remain "similarly situated," then the collective action is certified; if they are not, the collective action is decertified. *Choimbol*, 475 F. Supp. 2d at 563.

identified class of similarly situated persons. In that regard, the declarations affirm, *inter alia*, that the Plaintiffs collectively worked for three Master Contractors and out of four OnTrac warehouses in two states, [Doc. No. 30-4] ¶¶ 1-3; [Doc. No. 30-5] ¶ 2, do not receive overtime pay, [Doc. No. 30-4] ¶¶ 11, 14-15; [Doc. No. 30-5] ¶¶ 8-9, 12-14, and based on their interactions with hundreds of other delivery drivers, know that other delivery drivers who work for different Master Contractors are subject to similar work requirements and compensation. *See* [Doc. No. 30-4] ¶¶ 17-18; [Doc. No. 30-5] ¶¶ 15-16; *see also Wilson v. Marlboro Pizza, LLC*, No. 22-1465-BAH, 2024 WL 415349, at *3 (D. Md. Feb. 5, 2024) (authorizing notice where delivery drivers had the same job requirements and were "paid in the same manner, *i.e.*, a base hourly plus a mileage reimbursement rate that results in a net wage of lower than the federal minimum wage"); *Hager v. Omnicare, Inc.*, No. 5:19-cv-00484, 2020 WL 5806627, at *10 (S.D.W.V. Sept. 29, 2020) (permitting notice to be issued based on declarations which demonstrated "Omnicare has engaged in a nationwide misclassification scheme of treating delivery drivers as independent contractors, rather than employees, resulting in wage and hour violations under the FLSA. Indeed, their declarations describe the same or similar experiences regarding the daily control and direction that delivery drivers were subjected to by Omnicare regarding how deliveries were to be made").[7]

---

[7] OnTrac raises multiple manageability issues in opposing the Motion, some of which are substantive issues (*i.e.*, determining joint employment) and others merely go to damages. Although OnTrac's arguments in this regard will be resolved at the de-certification stage, as necessary, after the parties have exchanged fulsome discovery, the Court observes with respect to the joint employer issue that the factual showing presented in support of notice authorization, including OnTrac's role in crafting the terms and conditions of employment for the delivery drivers, the daily use of OnTrac's app, reporting to work at a OnTrac warehouse, communicating exclusively with OnTrac dispatchers throughout the day, and following OnTrac's predesigned route for delivering the packages, [Doc. No. 30-4] ¶¶ 5-9; [Doc. No. 30-5] ¶¶ 4-7, satisfies the "modest factual showing" requirement applicable to notice authorization. *See Hall v. DirectTV, LLC*, 846 F. 3d 757, 767 (4th Cir. 2017) (discussing that to determine FLSA joint employment liability turns on (1) "whether the defendant and one or more additional entities shared, agreed to allocate responsibility for, or otherwise codetermined the key terms and conditions of the plaintiff's work," and (2) "whether the two entities' *combined* influence over the terms and conditions of the worker's employment render the worker an employee as opposed to an independent contractor." (emphasis in original)).

Nor does the Southern District of New York's refusal to authorize a collective action in *West* counsel a different decision. *See West v. LaserShip, Inc.*, No. 21 Civ. 5382, 2024 WL 1461403, at *7 (S.D.N.Y. Apr. 4, 2024). Notably, in *West*, despite approximately nine months of discovery before seeking collective certification, Plaintiffs failed to produce nearly any information concerning whether there were other proposed class members similarly situated and in light of that discovery, applied a heightened standard. *Id.* at *6. [8] Here, the parties have not engaged in discovery, making it appropriate for the Court to apply the "modest factual showing" standard, and the information the Plaintiffs have produced is sufficient at this stage to authorize sending notice to prospective opt-in plaintiffs and permit the parties to proceed to discovery.

B. First-to-File Bar

Given the similarities between Plaintiffs' claims here and in *West*, OnTrac also seeks to bar this case under a first-to-file rule, even though no collective action has yet been conditionally certified in the *West* action. [Doc. No. 36] at 33. Plaintiffs argue that because *West* has not been conditionally certified and because there is no guarantee that it ever will be, the first-to-file rule should not apply. [Doc. No. 37] at 23.

The first-to-file rule sanctions an equitable determination made on a discretionary basis that the court first acquiring jurisdiction over a matter should proceed "without interference from other courts under suits subsequently instituted." *Carbide & Carbon Chems. Corp. v. U.S. Indus. Chems., Inc.*, 140 F.2d 47, 49 (4th Cir. 1944). The Fourth Circuit has "no unyielding first-to-file rule," *Gibbs v. Stinson*, 421 F. Supp. 3d 267, 286 (E.D. Va. 2019), *aff'd sub nom. Gibbs v. Sequoia Cap. Operations, LLC*, 966 F.3d 286 (4th Cir. 2020) (quotation omitted); and when considering

---

[8] Although the *West* Court denied collective certification at that time, it facilitated discovery of potential class members and expressly permitted Plaintiffs to file a renewed motion with additional details that may come to light as the plaintiffs' progressed in discovery, which has led to a renewed pending request for collective action notice. *See West v. LaserShip, Inc.*, No. 21 Civ. 5382, 2024 WL 1461403, at *7-8 (S.D.N.Y. Apr. 4, 2024).

whether to stay its hand under the first-to-file rule, courts in the Fourth Circuit typically balance three factors: (1) the chronology of the filings; (2) the similarity of the parties; and (3) the similarity of the issues at stake. *See Berger v. U.S. Dep't of Just.*, No. 5:16-CV-240, 2016 WL 3620752, at *8 (E.D.N.C. June 29, 2016).

The *West* action is certainly first in time, having been filed in June 2021,[9] with a First Amended Complaint filed in September 2021,[10] all well before the filing of this action on December 23, 2024. This factor weighs in favor of deferring to the *West* action.

Second, OnTrac is the defendant in both cases, and there is some overlap as to the proposed class members in these two actions.[11] In *West*, the proposed collective action is comprised of New York "delivery drivers who worked for Defendant [OnTrac], either directly or through one or more of its subcontractors" from June 17, 2018 through the present.[12] This action involves a nationwide class of all delivery drivers who worked for OnTrac since December 23, 2021.[13] In essence, this action encompasses *all* of the parties eligible to join *West*, but *West* only handles a portion of the proposed collective action members here. As such, this factor weighs against applying the first-to-file bar to this action in its entirety.

Third, both cases involve essentially the same legal theories and claims. *West* alleges that defendants violated the FLSA and New York Labor Law by improperly misclassifying delivery drivers as independent contractors and permitting the Plaintiffs to work for less than the minimum

---

[9] Complaint, *West v. LaserShip, Inc.*, No. 1:21-cv-05382 (S.D.N.Y. June 17, 2021), ECF No. 1.
[10] First Amended Complaint, *West v. LaserShip, Inc.*, No. 1:21-cv-05382 (S.D.N.Y. Sept. 22, 2021), ECF No. 22.
[11] Notably, there is a split among district courts on whether any court can find that the parties are similar between two collective actions before any collective action has been certified. *Compare Lac Anh Le v. PricewaterhouseCoopers LLP*, No. C–07–5476 MMC, 2008 WL 618938, *1 (N.D. Cal. Mar. 4, 2008) (determining that plaintiffs' in proposed collective actions cannot be similar before the plaintiffs opt-in to the action), *with Fuller v. Abercrombie & Fitch Stores, Inc.*, 370 F. Supp. 2d 686, 689 (E.D. Tenn. 2005) (determining there was substantial overlap between the parties where both actions seek certification of the same collective class).
[12] First Amended Complaint, *West v. LaserShip, Inc.*, No. 1:21-cv-05382 (S.D.N.Y. Sept. 22, 2021), ECF No. 22 ¶ 2.
[13] Class and Collective Action Complaint, *Hunter et al. v. Lasership, Inc.*, No. 1:24-cv-02345 (E.D. Va. Dec. 12, 2024), ECF No. 1 ¶ 1.

wage and without entitlement to overtime pay,[14] and this action similarly alleges the same violations under the FLSA, while also bringing claims under the Virginia Overtime Wage Act, Virginia Wage Payment Act, and Virginia Misclassification Law.[15] Given the substantial overlap between the legal issues, this factor tips in favor of applying the first-to-file bar.

      Important, however, is that the *West* court has not yet certified a collective action; and while the renewed motion for collective certification is pending in *West*, there is no guarantee that a collective action will ever be certified. In any event, at this point, the statutes of limitations are not tolled as to the proposed collective action members in either case until a court certifies the collective action and the prospective plaintiffs opt into the action. *See* 29 U.S.C. § 256. Accordingly, were this Court to apply the first-to-file bar to this action, a large number of delivery drivers who do not live in New York would likely lose any opportunity to have their claims heard, and if this Court were to exclude New York delivery drivers from this action under the first-to-file rule, some of those New York delivery drivers may likewise be barred from ever joining a collective action. Of course, the Court recognizes that including the New York delivery drivers in this action's notice may result in a New York driver opting into two collective actions at the same time; and the Court has no intent to affect the management of any collective action that may be authorized in the *West* case. Nevertheless, at this stage, given the lack of certification in the *West* action and the running of the applicable statute of limitations as to those New York drivers, the Court concludes that the best course at this point is to provide those drivers with the same opportunity to vindicate their rights as their similarly situated counterparts, particularly given the

---

[14] First Amended Complaint, *West v. LaserShip, Inc.*, No. 1:21-cv-05382 (S.D.N.Y. Sept. 22, 2021), ECF No. 22 ¶ 3.
[15] Class and Collective Action Complaint, *Hunter et al. v. Lasership, Inc.*, No. 1:24-cv-02345 (E.D. Va. Dec. 12, 2024), ECF No. 1 ¶ 3.

Court's ability to later consider at the de-certification stage whether any opted in New York delivery drivers should remain within the collective action.[16]

C. Proposed Notice and Distribution Methods

Plaintiffs have submitted a proposed notice form, [Doc. No. 30-7], reminder notice form, [Doc. No. 30-8], text message notice, [Doc. No. 30-9], and consent to join form, [Doc. No. 30-10]. OnTrac has raised certain objections to those forms and asks the Court to permit the parties to meet and confer on the form, content, and distribution of the proposed notices before seeking Court approval on revised proposed notices in the future. [Doc. No. 36] at 35.

First, OnTrac raises some specific objections to language in the notice form, which it alleges is inaccurate and misleading.[17] *Id.* at 35-36. In that regard, OnTrac objects to the Notice's statement on the first page that Plaintiffs and those receiving notice "worked for OnTrac." [Doc. No. 30-7] at 2. In order to address OnTrac's concerns in that regard, the Court will order that Plaintiffs revise this language to state "**If you were a delivery driver who provided deliveries for OnTrac Final Mile ("OnTrac") through one or more of its Master Contractors at any time since December 23, 2021, please read this notice.**" [Doc. No. 30-7].

Next, OnTrac objects to language that relates to potential recovery, and the "court's view of the case." But the Notice adequately cautions that "[t]he Court has not decided who is right and who is wrong," and any recovery may not occur without a successful settlement or trial. *See* [Doc. No. 30-7] at 2. Any objection in this respect is therefore overruled.

---

[16] When confronted with a similar situation, the Eastern District of California proceeded in a similar fashion. *See Adoma v. Univ. of Pheonix, Inc.*, 711 F. Supp. 2d 1142, 1149 (E.D. Cal. May 3, 2010) ("The court is persuaded that the equities in this case tip in favor of an exception to the first-to-file rule.").

[17] This includes "(i) misstatement that Plaintiffs "worked for OnTrac" . . . and (ii) confusing at best, and misleading at worst, statements regarding potential recovery, the ability to pursue claims if the individual does not opt-in, and the Court's view of the case." [Doc. No. 36] at 35-36.

OnTrac also objects to the Notice's statement that if a person does not opt-in to the action, "[y]ou keep any rights to sue OnTrac separately about the same legal claims in this lawsuit, but the limitations period on your federal claim will continue to run." [Doc. No. 36] at 36. That statement accurately and fairly describes the proposed collective action member's rights, and OnTrac's objection is overruled.

OnTrac next objects to Plaintiffs' requested methods of distribution, including reminder notices, text notices, and email notices. The Court has reviewed those proposed methods of distribution and finds them fair and reasonable, especially in light of the transient nature of many of these delivery drivers. As such, the Court will permit the Plaintiff to issue its initial notice, reminder notice, text message notice, and electronic mail notice. *See Thomas v. Maximus, Inc.*, No. 3:21cv498, 2022 WL 1482010, at *8 (E.D. Va. May 10, 2022) ("The Court authorizes Notice of the instant suit by mail, email and text message, as courts throughout the Fourth Circuit commonly do.").

OnTrac also requests that the Notice contain information concerning the discovery and other court obligations an opting-in Plaintiff may be required to satisfy. The Court has reviewed the parties respective proposals in this regard and will order that the Plaintiffs' notice be revised to state in this regard:[18] **"If you choose to be included, you will share in any monetary recovery that might come from a trial or a settlement in this lawsuit but may be required to provide attorneys for Defendant or the Court with information about your specific claim. You give up any rights to separately sue OnTrac about the same legal claims in this lawsuit."**

---

[18] The proposed Notice language currently reads: "If you choose to be included, you will share in any monetary recovery that might come from a trial or a settlement in this lawsuit. You give up any rights to separately sue OnTrac about the same legal claims in this lawsuit." [Doc. No. 30-7] at 2.

11

Finally, Defendant request that the parties be ordered to meet and confer on the notice period, *see* [Doc. No. 36] at 35, without specifically objecting to the proposed ninety-day notice period in the proposed notice. The Court finds the Plaintiffs' proposed notice period to be reasonable and consistent with notice periods typically provided in this Circuit and nationwide, *see Maximus*, 2022 WL 1482010, at *8 ("[T]he Court permits a 90-day opt-in period, in line with courts in this circuit and nationwide."), and the Defendant's request is denied.

## IV. CONCLUSION

For the reasons stated above, the Court concludes that Plaintiffs have sufficiently alleged a common policy or plan with respect to similarly situated persons and will authorize Plaintiffs to provide notice to prospective plaintiffs. Accordingly, it is hereby

**ORDERED** that the Motion be, and the same hereby is, **GRANTED**; and it is further

**ORDERED** that Plaintiff may send notice of this action in accordance with this Order to the following collective of potential plaintiffs: All delivery drivers nationwide who provided deliveries for OnTrac Final Mile through one or more of its Master Contractors at any time since December 23, 2021, and did not sign an agreement to arbitrate and/or a class waiver with OnTrac ("proposed Collective Members"); and it is further

**ORDERED** that Plaintiffs incorporate into the proposed Notice of the Lawsuit form, [Doc. No. 30-7], the two bolded changes on pages 10 and 11 set forth above, and after incorporating those revisions to the proposed Notice, it is **APPROVED** for distribution to the proposed Collective Members; and it is further

**ORDERED** that the proposed Reminder Notice, Text Message Notice, and Consent to Join Form, [Doc. Nos. 30-8, 30-9, 30-10] are hereby **APPROVED** for distribution to the proposed Collective Members; and it is further

**ORDERED** that within 14 days of this Order, Defendant shall provide Plaintiffs' counsel with a computer-readable list of the following information for each proposed Collective Member: (1) name; (2) driver identification number; (3) last known mailing address; (4) last known personal telephone number; (5) last known personal email address; (6) work location(s); and (7) dates of work as delivery drivers at each location. OnTrac shall also provide, for those proposed Collective Members whose notices are returned as undeliverable, the last four digits of Social Security numbers; and it is further

**ORDERED** that the Notice shall issue to proposed Collective Members via U.S. Mail, email, and text message; and it is further

**ORDERED** that the information set forth in the Notice shall also be posted on a standalone website, through which proposed Collective Members can download and submit the Consent to Join Form; and it is further

**ORDERED** that the opt-in period shall extend for 90 days from the date that the Notice issues; and it is further

**ORDERED** that a reminder Notice shall issue via U.S. Mail, email, and text message, to proposed Collective Members who have not yet returned a Consent to Join Form within 45 days after the Notice issues.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

May 14, 2025
Alexandria, Virginia

_____
Anthony J. Trenga
Senior U.S. District Judge

13